UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| In re:<br><br>CGG S.A.,<br><br>Debtor in a Foreign Proceeding. | **FOR PUBLICATION**<br><br>Case No. 17-11636<br>Chapter 15 |
|---|---|

**MEMORANDUM OPINION RECOGNIZING AND ENFORCING THE ORDER OF
THE FRENCH COURT SANCTIONING THE SAFEGUARD PLAN**

*A P P E A R A N C E S*

LINKLATTERS LLP
*Attorneys for the Foreign Representative*
1345 Avenue of the Americas
New York, NY 10105
By:   Margot Schonholtz, Esq.
       Robert H. Trust, Esq.
       Christopher J. Hunker, Esq.

**MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the Foreign Representative's *Motion for an Order Recognizing and Enforcing the Order of the French Court Sanctioning the Safeguard Plan and Granting Related Relief*, filed on December 6, 2017 (the "Motion," ECF Doc. # 19). The Motion is supported by the declaration of Beatrice Place-Faget (the "Place-Faget Declaration," ECF Doc. # 20), appointed foreign representative in this Chapter 15 case (the "Foreign Representative"), and the declaration of Caroline Texier (the "Texier Declaration," ECF Doc. # 21). The Motion is unopposed. The Court issues this Opinion because this is one of the few times when a United States Bankruptcy Court has been asked to recognize and enforce a French Safeguard Plan that has been sanctioned by a French court. For the reasons explained below, the Motion is **GRANTED**.

## I.  BACKGROUND

CGG S.A. (the "Foreign Debtor") and its subsidiaries (collectively, the "Group") engaged in substantial preparation and negotiations with its stakeholders on the terms of a comprehensive cross-border financial restructuring (the "Financial Restructuring"). (Mot. ¶ 1.)  Following execution of a lock-up agreement (the "Lock-Up Agreement") and a restructuring support agreement (the "Resolutions") with its principal creditors, the Group commenced insolvency proceedings in multiple jurisdictions to obtain court approval of the agreed Financial Restructuring.

On June 14, 2017 (the "Petition Date"), the Foreign Debtor commenced the Safeguard Proceeding in the French Court and filed a Chapter 15 petition in this Court, thereby commencing this Chapter 15 Case.  In this Chapter 15 case, the Foreign Debtor requested recognition of the Safeguard Proceeding as a foreign main proceeding under section 1520 of the Bankruptcy Code, and on July 13, 2017, this Court entered its Order Recognizing Foreign Proceeding (the "Recognition Order," ECF Doc. # 17).

On July 12, 2017, with the support of its key creditor constituencies and one institutional shareholder, the Foreign Debtor executed the Safeguard Plan in France and distributed it to its creditors. (Place-Faget Decl. ¶ 14.)  In accordance with French law, on July 28, 2017, the Foreign Debtor convened the meetings of the committee of credit institutions and assimilated entities (the "Lenders' Committee") and the bondholders' general meeting (the "BGM") to vote on the Safeguard Plan. (*Id.*)  The Lenders' Committee voted unanimously to approve the Safeguard Plan, and holders of approximately 93.5% in amount of High Yield Bonds and Convertible Bonds that cast votes at the BGM also approved the Safeguard Plan, surpassing the two-thirds in amount threshold required within each committee/meeting under French law. (*Id.*)

2

Likewise, the Foreign Debtor's shareholders near unanimously supported the Financial Restructuring. (*Id.* ¶ 22.)

On November 20, 2017, the French Court held a hearing (the "Sanctioning Hearing") at which the Foreign Debtor requested that the French Court sanction the Safeguard Plan. (*Id.* ¶ 24.)

On December 1, 2017, the French Court entered the Sanctioning Order.[1] (*Id.* ¶ 10.) The Sanctioning Order first overruled a convertible bondholder group's objection against the vote of the BGM on the Safeguard Plan, holding that the objection was inadmissible because it did not comply with French law. The Sanctioning Order also approved the Safeguard Plan. (*Id.*) In the Sanctioning Order, the French Court found that the differentiated treatment among creditors, permitted under French law if the difference in the situation of the creditors so justifies, provided therein was reasonable under the circumstances and justified based on objective facts, in light of the factual evidence provided to the French Court. (*Id.* ¶ 11.) The French Court also noted that the Safeguard Plan had been approved by the Lenders' Committee, the BGM, and the shareholders' meeting and was supported by the employees' representatives. Given the overwhelming support of these stakeholders, the French Court found that the Safeguard Plan was satisfactory in light of the interests of the creditors, the shareholders and the employees. (*Id.*) Furthermore, the French Court found that the Safeguard Plan would provide CGG with sufficient financial flexibility to ensure its sustainability and development in the context of the anticipated market conditions, which is in the interests of all stakeholders. (*Id.*)

---

[1] An English translation of the French court's careful and thorough Sanctioning Order, overruling the objection and sanctioning the Safeguard Plan, is filed on the docket. (ECF Doc. # 19, Ex. C.)

3

The Safeguard Plan provides, in part, as follows:

a) Full equitization of the principal amounts due under the High Yield Bonds and the Convertible Bonds, the holder of which receiving their pro rata share of new common shares of the Foreign Debtor (the "New CGG Shares") in exchange for, and in full and final satisfaction and discharge of, their claims; and the $86 million of accrued interest on the High Yield Bonds shall receive new second lien senior notes in satisfaction thereof (the "New Second Lien Interest Notes);

b) The "exchange" of the claims under the Secured Loans into 5-year maturity notes with a bullet repayment at maturity;

c) Provision of new money up to a maximum amount of $500 million;

d) Issuance of warrants at no cost to the Foreign Debtor's existing shareholders (together with the New Second Lien Interest Notes and the New CGG Shares to be issued to the High Yield Bondholders and the Convertible Bondholders under the Safeguard Plan, the "Safeguard Securities") in addition to the preferential subscription rights for the New CGG Shares.

(Mot. ¶ 10.)

## II.  DISCUSSION

### A.  Recognition And Enforcement Of The Sanctioning Order

Under section 1521(a)(7) of the Bankruptcy Code, upon recognition of a foreign proceeding, with certain express exceptions, the Court may grant "any appropriate relief," including "any additional relief that may be available to a trustee" that the Court determines is necessary to effectuate the purpose of Chapter 15 and to protect the assets of the debtor or the interests of the creditors. 11 U.S.C. § 1521(a)(7). Appropriate relief under section 1521 includes enforcing a foreign confirmation order. *See In re Rede Energia S.A.,* 515 B.R. 69, 89 (Bankr. S.D.N.Y. 2014). Relief under section 1521 will be granted "only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected." *Id.* at 90; 11 U.S.C. § 1522(a). "As with section 1521, relief under section 1507 may include recognition and enforcement of a plan approved by a foreign court." *In re Cell C Proprietary Ltd.*, 571 B.R. 542, 551 (Bankr. S.D.N.Y. 2017) (citing *Rede Energia*, 515 B.R. at 94–95).

4

Based on the Motion and the attached declarations, the Court finds that the recognition and enforcement of the Sanctioning Order is "appropriate relief" under section 1521(a) of the Bankruptcy Code, and also as "additional assistance" under section 1507. Recognition and enforcement of the Sanctioning Order is necessary to ensure that the Financial Restructuring contemplated by the Safeguard Plan and the confirmed Chapter 11 plan can be implemented to effectuate the Financial Restructuring of the Group without disruption or adverse actions being brought against the Foreign Debtor or its assets in the United States. The Safeguard Plan has received overwhelming support from the Group's financial creditors and its shareholders. The effectiveness of the Chapter 11 plan in the Chapter 11 case is also conditioned upon, among other things, French Court approval of the Safeguard Plan and this Court's recognition and enforcement in this Chapter 15 case of the order of the Sanctioning Order.

As required by section 1522 of the Bankruptcy Code, the interests of the Foreign Debtor, its creditors and shareholders are sufficiently protected under the Safeguard Plan. An order enforcing the Sanction Order will permit the Foreign Representative to take the actions necessary to implement the Safeguard Plan in the United States. Absent recognition and enforcement, the Safeguard Plan may not be fully implemented as contemplated by, and to the detriment of, the parties who fully support the Safeguard Plan. Further, at the Sanctioning Hearing, the French court examined and determined that the Safeguard Plan sufficiently protected the interests of all affected creditors in accordance with French law. (Texier Decl. ¶ 9.) Consistent with French law and procedures governing sanctioning hearings, the French Court gave interested parties the opportunity to be heard, and heard the oral arguments of the Foreign Debtor and various stakeholders of the Foreign Debtor and participants in the Safeguard Proceeding, including the Convertible Bondholder Group. (*Id.*) The French Court also considered the written legal

5

arguments and supporting evidence provided by all the parties and filed therewith.  (*Id.*)  The French court examined, and eventually overruled in the Sanctioning Order, the Convertible Bondholders' objection that the Safeguard Plan's different treatment of the High Yield Bondholders was unreasonable and unjustified.  (*Id.*)

Further, the Foreign Representative also seeks to permanently enjoin any parties affected or bound by the Safeguard Plan from commencing or taking any actions inconsistent with the Safeguard Plan or the Sanctioning Order within the territorial jurisdiction of the United States with respect to claims or interests treated under the Safeguard Plan.  The Court finds that such relief is warranted under section 1521(e) of the Bankruptcy Code to prevent any parties from gaining an unfair advantage over other parties in interest subject to the Safeguard Plan.

### B. Exemption from Registration of the Safeguard Securities Under Section 1145

The Foreign Debtor has also shown that the exemption from the seller's obligation to register securities under federal and state securities law under section 1145(a)(1) of the Bankruptcy Code is warranted in this case.

Section 1145(a)(1) of the Bankruptcy Code provides a limited exemption from registration under federal and state securities law for an offer or sale of securities that are:

> (a) offered or sold "under a plan";
> (b) "of the debtor, of an affiliate participating in a joint plan with the debtor or of a successor to the debtor under the plan"; and
> (c) "in exchange for a claim against, an interest in, or a claim for an administrative expense in the case concerning, the debtor or such affiliate."

11 U.S.C. § 1145(a)(1).

Section 1145 "shield[s] from liability under the federal securities laws those individuals participating in the reorganization of an entity in bankruptcy" for the purpose of "encourag[ing] satisfaction of debts or other existing interests in the debtor."  *S.E.C. v. Universal Exp., Inc.*, 475 F. Supp. 2d 412, 425 (S.D.N.Y. 2007).  Courts in Chapter 15 cases have granted relief under

6

sections 1507 and 1521, applying the section 1145 exemption to the issuance of securities by foreign debtors pursuant to a plan that satisfies the requirements of section 1145. *See In re Abengoa, S.A.*, Case No. 16-10754 (KJC) (Bankr. D. Del. Dec. 8, 2016) (ruling that the securities issued by the foreign debtor were exempt from registration under section 1145 of the Bankruptcy Code "[b]y virtue of 11 U.S.C. § 1521 and in the alternative 11 U.S.C. § 1507"); *In re Quebecor World Inc.*, Case No. 08-13814 (JMP) (ECF Doc. # 12) (Bankr. S.D.N.Y. July 1, 2009) (giving full force and effect to the Canadian Sanction Order approving debtors' reliance on the section 1145 exemption to issue securities without registration with the SEC).

As required by section 1145(a)(1), the Safeguard Securities (i) are issued "under a plan," as the Safeguard Plan is the functional equivalent of a Chapter 11 plan; (ii) are issued by the Foreign Debtor, the "debtor" under section 1502 of the Bankruptcy Code; and (iii) are offered "in exchange for a claim against [or] an interest in . . . the debtor," as the Safeguard Plan provides that High Yield Bondholders and the Convertible Bondholders will receive the Safeguard Securities in exchange for and in satisfaction of their claims against an in interests in the Foreign Debtor. The Court concludes that the French Safeguard Plan provides sufficient disclosure concerning the securities that will be issued under the Safeguard Plan.

    **C.**    **Chapter 15 Case Closure**

The Court also finds the relief sought by the Foreign Representative to authorize the Foreign Representative to seek entry of a final decree to close this Chapter 15 case upon notice of presentment and deeming this Motion to be the final report required to be filed by the Foreign Representative under Bankruptcy Rule 5009(c) is warranted. As soon as this Court's order becomes final and non-appealable and the Effective Date has occurred (as defined under the Safeguard Plan), the requirements of section 350(a) of the Bankruptcy Code will be satisfied.

The Motion sufficiently describes the Foreign Representative's activities in this Chapter 15 case and contains all necessary details for a final report. Other than this Motion, there are no outstanding motions, contested matters or adversary proceedings.

### D. Waiver of 14-Day Stay

Finally, this Court finds that a waiver of the 14-day stay of effectiveness period is appropriate in these circumstances. The waiver will allow the Foreign Debtor to proceed immediately with the implementation of the restructuring steps, in compliance with its obligations under the Lock-Up Agreement, which requires that the Financial Restructuring be implemented no later than February 28, 2018. The waiver will help the Foreign Debtor to avoid any delay in obtaining from the AMF–the French financial markets regulatory authority–the visa that is necessary to begin the restructuring implementation steps.

### III. CONCLUSION

For the reasons explained above, the Motion is **GRANTED**. A separate order granting the requested relief will be entered.

Dated:   December 21, 2017
         New York, New York

*Martin Glenn*
MARTIN GLENN
United States Bankruptcy Judge